OPINION
{¶ 1} Defendant-appellant, Todd L. Hatfield, appeals from a judgment of the Franklin County Court of Common Pleas, pursuant to jury verdict, finding him guilty of aggravated murder, tampering with evidence, and gross abuse of a corpse.
 {¶ 2} On November 15, 2002, the Clinton Township Fire Department was dispatched to a dumpster fire located off Lehner Road. Firefighter Brown was among those who went to the scene. In attempting to ensure the fire was extinguished, Brown discovered a body with extensive burn injuries. Brown also noticed a blunt injury to the head and neck of the victim. The body was later identified as that of Walter Howard.
 {¶ 3} Detective Robinson of the Clinton Township Police Department began to investigate possible leads. Robinson learned that Howard spent time at 2240 North Fourth Street with Debra Marshall and defendant. The apartment was rented in Marshall's name, but defendant also lived there most of the time during the relevant period.
 {¶ 4} Marshall and defendant had a relationship and moved in together in September 2002, despite defendant's marriage to Sheila Hatfield. They used crack cocaine on a regular basis. Marshall and defendant obtained their drugs from Howard and also directed friends and acquaintances to Howard to purchase drugs from him. Marshall and defendant allowed Howard to occasionally sleep on the couch in the apartment in exchange for drugs.
 {¶ 5} Detective Robinson spoke to Marshall and defendant about Howard. Marshall initially lied, in part because she was trying to protect defendant, but also because she feared that defendant might retaliate against her if she provided information. Eventually, Marshall told Robinson, in detail, the events that led to Howard's murder and the subsequent events.
 {¶ 6} According to Marshall's testimony at trial, on the evening of November 10, 2002 Marshall and defendant went to the home of their friend Bryan Michael. Upon leaving, defendant asked to borrow Michael's baseball bat. Michael agreed, not thinking anything of the request at the time. On Monday evening, November 11, 2002, Marshall and defendant picked up Howard at a friend's house. Eventually, all three returned to 2240 North Fourth Street.
 {¶ 7} At some point during the late evening of November 11 or early morning of November 12, 2004, defendant told Howard they did not have enough money for rent because defendant and Marshall smoked the crack they intended to sell. Howard, who did not smoke crack, told defendant he would not give them any more drugs or any rent money. Defendant became angry with Howard and told Marshall he was going to "whack him." (Tr. 301.) Marshall told defendant to leave Howard alone.
 {¶ 8} Marshall testified she was in the bedroom, and she suddenly heard "boom, boom, boom" and Howard yelling, "Debbie, help me, Debbie help me." (Tr. 302.) Marshall went to the kitchen to see what was happening when defendant hit her in the face with the bat, told her not to tell anyone, threatened that, if she did, she and her family would be next, and ordered Marshall back to the bedroom. Marshall got into the closet and continued to hear thumping noises and screaming. Defendant eventually returned to the bedroom, opened the closet and said "It was harder than I fucking thought." (Tr. 305.)
 {¶ 9} According to Marshall, defendant proceeded to remove the crack cocaine and money from Howard's pocket. Defendant and Marshall then smoked the crack cocaine. Later that morning, Marshall complied with defendant's directive to go to Lowe's and purchase cleaning supplies. After she returned, the landlord came to the apartment to collect the rent. Marshall went outside and paid him with the cash defendant took from Howard. Defendant moved Howard's body to the spare bedroom and started to clean the apartment. Marshall left, went to a bar, and then went to the apartment of Walt, Sr. and Walt, Jr. where she told both of them she believed defendant just killed Howard.
 {¶ 10} Marshall testified she returned to the apartment around noon on Wednesday. Both defendant and Howard's body were gone. When defendant returned around two o'clock in the afternoon, he told Marshall to pack bags for a couple of days. Defendant, Marshall, and Bryan Michael went to the Day's Inn where Michael rented a room. Defendant and Michael then left. Upon their return, defendant stated he "thought he had fucked up" and "it was going to be on the news." (Tr. 332.) Soon thereafter, a news story was broadcast about a dumpster fire in Clinton Township at a location Marshall recognized as one of defendant's former employers.
 {¶ 11} According to Robinson's testimony at trial, defendant also rented a steam vacuum to clean the carpet. Robinson confirmed the November 13, 2002 rental in the name of Todd Hatfield. DNA results also established the presence of Howard's blood in the 2240 North Fourth Street apartment.
 {¶ 12} On February 14, 2003, the Franklin County Grand Jury indicted defendant on one count of aggravated murder, one count of tampering with evidence, and one count of gross abuse of a corpse. On November 26, 2003, a jury found defendant guilty of all counts. Defendant was sentenced to life in prison with parole eligibility after 20 years for the aggravated murder conviction, four years for tampering with evidence, and 11 months for gross abuse of a corpse. The trial court ordered the sentences to run consecutively.
 {¶ 13} Defendant appeals, assigning the following errors:
I. The trial court erred and deprived appellant of due process of law as guaranteed by the fourteenth amendment to the united states constitution and article one section ten of the ohio constitution by finding appellant guilty of aggravated murder, tampering with evidence and gross abuse of a corpse as those verdicts were not supported by sufficient evidence and were also against the manifest weight of the evidence.
II. The trial court erred to the prejudice of the appellant by improperly sentencing him to consecutive terms of actual incarceration in contravention of ohio's sentencing statutes.
III. The trial court erred to the prejudice of the appellant by improperly sentencing him to a term of actual incarceration which was longer than the minimum term in contravention of ohio's sentencing laws.
 {¶ 14} In the first assignment of error, defendant contends insufficient evidence supports the jury's verdict, and he further maintains the verdict is against the manifest weight of the evidence. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Thompkins (1997),78 Ohio St.3d 380, 386. Sufficiency is a test of adequacy. Id. We construe the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus; State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387.
 {¶ 15} When presented with a manifest weight argument, we engage in a limited weighing of the evidence to determine whether the jury's verdict is supported by sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. Conley, supra; Thompkins, at 387 ("When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony"). Determinations of credibility and weight of the testimony remain within the province of the trier of fact. State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Reversals of convictions as being against the weight of the evidence are reserved for cases where the evidence weighs heavily in favor of defendant. State v. Otten (1986),33 Ohio App.3d 339,340. Further, "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by theweight of the evidence must necessarily include a finding of sufficiency." State v. Moore (Apr. 19, 2000), Summit App. No. 19544, quoting State v. Roberts (Sept. 17, 1997), Lorain App. No. 96CA006462. (Emphasis sic.)
 {¶ 16} "Besides proof of the statutory elements of [the offense], the state must also accomplish the identification of [defendant] as the perpetrator beyond a reasonable doubt." Statev. Marcum, Columbiana App. No. 03 CO 36, 2004-Ohio-3036, at ¶ 22, citing State v. Cook (1992), 65 Ohio St.3d 516, 526. Direct and circumstantial evidence are of equal weight. Jenks, at paragraph one of syllabus. Establishing the defendant's name to be the same as that of the person who witnesses testified committed the crime is generally insufficient evidence of identity. Marcum, supra.
 {¶ 17} Defendant asserts that because neither of the state's two main witnesses positively identified him in court as the perpetrator of the crime, insufficient evidence sustains the verdict. For the same reason, defendant contends the verdict is against the manifest weight of the evidence. Contrary to defendant's contentions, the record reflects sufficient competent, credible evidence that renders the jury's verdict in accord with the manifest weight of the evidence. Jenks;Thompkins, supra.
 {¶ 18} Of that evidence, the most important is the testimony of Detective Robinson, who not only testified at the grand jury hearing implicating the same person he testified against at trial, defendant Todd Hatfield, but also testified at trial that he talked to a man who lived at 2240 North Fourth Street on several occasions in connection with Howard's murder. Robinson referred to defendant in court as Todd Hatfield, the person living with Marshall and the one Robinson eventually investigated for murder. The following testimony is illustrative:
A. * * * We kept going back and talking to Debra Marshall, and I would say in December we probably talked to Debra Marshall around eight or nine times. And we also talked to a gentleman who lived there with her.
Q. That gentleman was identified?
A. Yes. Todd Hatfield.
Q. And you had an opportunity to speak with Todd Hatfield?
A. I spoke to him several times, yes.
Q. Do you see him in the courtroom today?
A. Yes.
Q. Please describe what he is wearing?
A. White shirt, blue tie.
Q. Describe his physical features?
A. Dark hair, dark mustache, wears glasses.
Mr. Creedon: Let the record reflect that the witness has identified the defendant, Todd Hatfield.
The Court: So reflected.
(Tr. 49.)
 {¶ 19} Officer David's testimony also established defendant's residence as 2240 North Fourth Street. David located a 1986 Pontiac in the backyard of 459 East Oakland Avenue and impounded the vehicle because he thought it was stolen. In actuality, it was defendant's car. According to the evidence at trial, the Bureau of Motor Vehicles ("BMV") records listed "Todd Hatfield" as the owner, and the address for defendant in the BMV records was 2240 North Fourth Street.
 {¶ 20} If the testimony of the law enforcement officers were not enough to provide identification of defendant as the perpetrator of the offenses at issue, Marshall testified at length about how she initially met defendant, their subsequent relationship, their drug usage, their mutual friends, the parties they had, and the murder. Marshall referred to defendant by his full name on several occasions during her testimony and also discussed defendant's wife Sheila and the problems related to defendant's marriage. Marshall's testimony overwhelmingly established that the man in the courtroom was the same Todd Hatfield as the one she heard kill Howard and who disposed of the body and set it on fire. No rational factfinder could think she was testifying about someone other than defendant.
 {¶ 21} Defendant, however, contends Marshall was not a credible witness based on her admitted drug use and prior criminal record. Marshall testified openly about her drug habit and her record. The jury was also made aware of Marshall's possible motive for testifying: in exchange for her testimony, she would be charged with a lesser degree felony. The jury heard all the evidence and found Marshall credible. Determinations of credibility and weight of testimony will not be disturbed on appeal unless it is "patently obvious that the factfinder lost its way." State v. Whitmore, Miami App. No. 01CA28, 2002-Ohio-535. Defendant's argument fails to meet that standard.
 {¶ 22} In further support that the state properly identified defendant at trial, the state notes that Bryan Michael testified, the state having located him after Marshall's testimony. Michael never spoke to the prosecutor or anyone in the prosecutor's office prior to that day about his testimony; nor did Michael speak to Marshall about her testimony. Michael nonetheless testified to the relationship between Marshall and defendant, as well as the relationship between Marshall, defendant, and Howard and to the drug dealings that took place at 2240 North Fourth Street. He further testified to defendant's borrowing his wooden baseball bat the night before the murder, defendant's renting the hotel room, the smell of bleach at 2240 North Fourth Street after Marshall told him that defendant murdered Howard, and finally, defendant's offering him and Walt Jr. money to help dispose of the body in the dumpster.
 {¶ 23} Further, after both sides rested, defendant made a Crim.R. 29 motion. During that colloquy, defendant raised the issue of the state's failure to positively identify him as the perpetrator of the crimes:
Your Honor, there is only one other thing and that is I don't know how the court wants to handle this, but during the course of the proceedings, during the course of this trial, and this is atechnical situation, but at no time to my recollection was Todd Hatfield identified in this courtroom by anyone, by any of the witnesses as the perpetrator in any of these crimes.
(Tr. 494. Emphasis added.)
 {¶ 24} The state replied by noting Detective Robinson identified defendant and by referring to Debra Marshall's testimony that recognized defendant by his full name. The trial court told the reporter to check the record to make sure identification occurred. The next day the trial court stated: "The record reflected or I should say that the court reporter * * * checked the record and Detective Robinson * * * did identify the defendant, Todd Hatfield, in the courtroom; and the court makes a finding that that is sufficient identification for this case." (Tr. 498-499.)
 {¶ 25} In response to the state's contentions at trial and the trial court's ruling, defendant presented no evidence that he is not the person the witnesses spoke of and identified at trial. To the contrary, defendant put on his own witness, Ronald Miracle, to provide an alibi for defendant. Miracle testified defendant was at Sheila Hatfield's house during the time of the murder, but he left and ultimately arrived at Marshall's apartment. Looking for him, Sheila Hatfield and Miracle went straight to 2240 North Fourth Street.
 {¶ 26} Defendant's contentions reduce to an argument that a rational jury could conclude the evidence of identification is insufficient; that another Todd Hatfield, married to a woman named Sheila Hatfield, resided with his girlfriend at 2240 North Fourth Street. Defendant's argument is without merit. State v.Lewis (Dec. 15, 2000), Ross App. No. 99CA2523; State v.Cardwell (Sept. 2, 1999), Cuyahoga App. No. 74496 (concluding that although victims could not identify defendant as the assailant, circumstantial evidence amply supported the conclusion that defendant was one of the them); State v. Moore (Apr. 19, 2000), Summit App. No. 19544 (noting that although victim was unable to identify defendant as her attacker, she was able to give a description of his physical build and voice, and circumstantial evidence at trial was enough to sustain his conviction). Accordingly, defendant's first assignment of error is overruled.
 {¶ 27} In his second assignment of error, defendant contends the trial court erred when it imposed consecutive sentences without making the requisite findings on the record. The state properly concedes error.
 {¶ 28} When imposing consecutive sentences, the trial court must find that (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses, and (3) one of the enumerated circumstances in R.C.2929.14(E)(4)(a) through (c) is present. State v. Comer,99 Ohio St.3d 463, 466, 2003-Ohio-4165. Pursuant to R.C.2929.19(B)(2)(c), the trial court must make a finding that sets forth the reasons for imposing consecutive sentences. State v.Hurst (Nov. 8, 2001), Franklin App. No. 01AP-77.
 {¶ 29} In this case, the trial court expressly found that the failure to impose consecutive sentences would demean the seriousness of the offense. It also found a strong likelihood defendant would re-offend. Even if the trial court's explanation for its sentence satisfied some aspects of R.C. 2929.14(E), the court failed not only to "find" that consecutive sentences are not disproportionate to the danger the offender poses to the public, but also to identify an enumerated circumstance in R.C.2929.14(E)(4)(a) through (c). Therefore, the case must be remanded to the trial court to make the appropriate findings under R.C. 2929.14(E)(4). Accordingly, defendant's second assignment of error is sustained.
 {¶ 30} Defendant's third assignment of error asserts the trial court imposed nonminimum prison terms with respect to tampering with evidence and gross abuse of a corpse without making the requisite findings on the record. The trial court imposed nonminimum sentences; it did not impose the maximum sentence. R.C. 2929.14(B) provides that a defendant shall be sentenced to the shortest prison term authorized for the offense unless (1) the offender was serving a prison term at the time of the offense or the offender previously served a prison term, or (2) the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.
 {¶ 31} As noted, the transcript reveals the trial court found that the failure to impose consecutive sentences would demean the seriousness of defendant's conduct. It also found that this was the worst form of the offense, which the language required when imposing maximum sentences and is not necessary in this case. In the final analysis, we need not determine whether the trial court's findings satisfy the requirements of R.C.2929.14(B) because the trial court will be resentencing defendant as a result of our disposition of defendant's second assignment of error. In resentencing defendant, the trial court will have the opportunity to more clearly address the necessary findings under R.C. 2929.14(B). Accordingly, defendant's third assignment of error is sustained to the extent indicated.
 {¶ 32} Accordingly, having overruled defendant's first assignment of error, but having sustained his second assignment of error and his third assignment of error to the extent indicated, we affirm in part and reverse in part the judgment of the trial court and remand this matter to the trial court for resentencing.
Judgment affirmed in part and reversed in part; case remandedfor resentencing.
Brown and McCormac, JJ., concur.
McCormac, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), ArticleIV, Ohio Constitution.